## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JULIUS CHISHOLM<br><br>Plaintiff,<br><br>v.<br><br>NATIONAL RAILROAD PASSENGER CORPORATION d/b/a AMTRAK<br><br>Defendant. | Civil Action No.: |

### COMPLAINT

Plaintiff, Julius Chisholm demands judgment against the defendant, National Railroad Passenger Corporation (AMTRAK) for the following reasons.

### THE PARTIES

1. Julius Chisholm is an adult individual residing at 14 Dubios Street, Roxbury, MA 02119.

2. Defendant National Railroad Passenger Corporation ("AMTRAK") is a corporation established by an Act of Congress of October 30, 1970, 84 Stat. 1328 *et seq.*, commonly known as the Rail Passenger Service Act of 1970 and amendments thereto. Its corporate headquarters are located at 60 Massachusetts Avenue, NE, Washington, DC 20002-4285.

### JURISDICTION AND VENUE

3. This is a lawsuit brought under the Federal Employers Liability Act, 45 U.S.C. §§51 through 60, as amended.  For simplicity, the plaintiff will refer to these statutes, and the case law interpreting them, as the "FELA" or sometimes the "Act".

4.  This Court has jurisdiction over this claim pursuant to 28 U.S.C. § 1331 and 45 U.S.C. § 56 as the defendant is "doing business" in Massachusetts within the meaning of the Act.

5.  Venue is proper as the defendant resides in the district pursuant to 28 U.S.C. 1391(b).

FACTUAL BACKGROUND

6.  Plaintiff hereby restates and reavers, as though fully set forth herein, the facts and allegations in paragraphs 1-5 above.

7.  On March 13, 2008, Julius Chisholm was employed by the defendant as a trackman.

8.  At all relevant times AMTRAK was and is a railroad corporation doing business in the Commonwealth of Massachusetts.

9.  At all relevant times, AMTRAK owned and operated in interstate commerce a railroad line that passed through Providence, RI.

10. On March 13, 2008, plaintiff was part of a work crew inspecting track for the defendant in connection with or in furtherance of the defendant's business of interstate commerce.

11. At all relevant times, the defendant owned, inspected, maintained and operated an area of track in Providence, RI known as "Track 2".

12. In the course of his duties as a trackman at that time and place, plaintiff was required to and did work on the tracks for the purpose of keeping watch for trains.

13. On the date specified, the plaintiff, two AMTRAK co-workers, and a contractor were working as a group inspecting and inventorying concrete tie conditions on "Track 2" along AMTRAK's Northeast Corridor in Providence, RI.

14. As foreman of the work crew, AMTAK employee Richard Mallette was responsible for the on-track safety of the work group.

15. At different times on the morning of March 13, 2008, the group worked on the tracks with two methods of on-track safety: "foul time" and "train approach warning".

16. "Foul time" is a method of establishing working limits on controlled track in which a roadway worker is notified by the train dispatcher or control operator that no trains will operate within a specific segment of controlled track until the roadway worker reports clear of the track.

17. "Train approach warning" is a method of establishing on-track safety by warning roadway workers of the approach of trains in ample time for them to move to or remain in a place of safety.

18. Mr. Mallett was required to meet with the work crew each time he changed the method of on-track safety to ensure that all workers were aware of the protection in effect.

19. Prior to the accident, safety was coordinated among trains and the work crew via radio between Mr. Mallette and AMTRAK dispatcher Daniel Perry.

20. At 10:00 a.m. on the date of the accident Acela train 2154 left Penn Station in New York City, New York bound for Boston, Massachusetts.

21. That train was engineered by AMTRAK employee J.J. O'Neill.

22. On the date specified, at approximately 1:11 p.m., AMTRAK Acela train 2154 struck the plaintiff's work group in the vicinity of milepost 186.1 on Track 2 in Providence, RI.

23. Prior to the accident Mr. Mallette released the work crew's foul time, switched to an alternate form of protection but failed to inform the plaintiff or other crew members.

24. At the time of the accident the plaintiff was unaware that the crew was on the tracks without "foul time" protection.

25. Moments prior to the accident the plaintiff, acting as the crew's watchman, was instructed to remain close to Mr. Mallett.

26.  The train did not sound its horn as it approached the workers.

27. The crew operating the train was not aware the work crew was working in the area.

28. At the time of the accident the group was inspecting track in a known "hot spot".

29.  "Hot spots" are locations on the railroad where additional roadway protection is required. These physical locations include a variety of conditions, such as curves with limited visibility, tunnels with limed clearances, and locations with heavy outside noise.

30. The plaintiff was nearly struck by the train and had to dive out of the way of the train to avoid being struck.

31. Gary Graves, a contractor working with the group, was in the gauge of the track and was killed instantly; Mr. Mallette was struck by the train and suffered severe injuries.

32. A third AMTRAK employee was not with the group on the tracks at the time of the accident as he was assigned by Mr. Mallette to remain in the company truck.

33. As a result of the accident the plaintiff was taken to the hospital via ambulance.

34. Since the date of the accident the plaintiff has continued to seek treatment for injuries suffered in this accident and those injuries may be permanent.


## COUNT I -- FELA

35. Plaintiff hereby restates and reavers, as though fully set forth herein, the facts and allegations in paragraphs 1-34 above.

36. This action arises under, and the rights and liabilities of the parties to this case are governed by, the Federal Employer's Liability Act, Title 45 U.S.C. § 51 et seq.

37. Plaintiff is an injured railroad worker who brings this suit to recover for all job related personal injuries and damages he has suffered as the result of an incident on or about March 13, 2008. The defendant is legally responsible for these injuries and damages because of its failure to provide the plaintiff with a safe workplace and the defendant's violation of various safety regulations.

38. FELA is remedial legislation enacted by the United Sates Congress in 1908 to compensate railroad workers for personal injuries suffered in the course of their employment. Railroad covered under the Act are not eligible for state workers' compensation and FELA provides the sole remedy against their railroad employers for job-related injuries.

39. Under FELA, railroads such as the defendant may not delegate the duty to provide employees with a reasonably safe workplace.

40. The defendant is a corporation established by an Act of Congress of October 30, 1970, 84 Stat. 1328 *et seq.*, commonly known as the Rail Passenger Service Act of 1970 and amendments thereto.

41. The defendant owns, maintains and operates a railroad and related facilities within the jurisdiction of this court.

42. The defendant is now and, at all times relevant to this case has been, a "common carrier by railroad" engaged in interstate commerce within the meaning of 45 U.S.C. § 51.

43. On or about March 13, 2008, while working within the scope of his duties as a trackman for the defendant, the plaintiff was injured due to the defendant's negligence.

44. At the time of his injury, the plaintiff was working as part of the defendant's business as a railroad engaged in interstate commerce.

45. The plaintiff's duties with the defendant were "in furtherance of interstate commerce" as contemplated by 45 U.S.C. § 51.

46. The plaintiff's duties with the defendant "directly and substantially affected" interstate commerce as contemplated by 45 U.S.C. § 51.

47. The plaintiff's injuries are painful, inconvenient and frustrating to him. They harm the quality of his life, and have required both past and future medical treatment. The injuries are or may be permanent. They have impaired the plaintiff's ability to work, and he has lost income and benefits because of these injuries and has suffered an impairment of his earning capacity.

48. The plaintiff has or may have suffered other damages as a result of the injuries described above. In this lawsuit, he claims compensation for all injuries and damages recoverable under FELA, whether or not specifically alleged.

49. The defendant caused the plaintiff's injuries by violating FELA and related laws enacted for the safety of railroad workers. Because of its statutory negligence and violation of the law related to FELA, the defendant is legally obligated to compensate the plaintiff for his injuries.

50. Pursuant to 49 U.S.C. § 24301 AMTRAK is a rail carrier subject to the laws and regulations governing safety.

51. The specific negligence of the defendant will be developed during discovery. Nevertheless, the plaintiff believes, and therefore alleges, that AMTRAK, its agents, servants and and/or employees were negligent in the following ways:

    a. Failing to provide him with a reasonably safe workplace;

    b. Failing to warn him of known or reasonably foreseeable dangers;

c.  Failing to provide him with adequate equipment;

d.  Failing to provide him with adequate assistance;

e.  Failing to provide him with adequate information concerning the areas in which he was required to work;

f.  Failing to adequately protect him from dangerous conditions;

g.  Failing to test or properly evaluate the conditions and equipment which he was required to work;

h.  Failing to develop proper procedures for performing his work;

i.  Improperly assigning him to duties likely to result in the injuries he suffered;

j.  Failing to inspect the work areas;

k.  Failing to adopt and enforce proper rules, regulations and procedures concerning work practices and work areas;

l.  Was otherwise negligent through its officers, agents and employees in ways that the plaintiff has not specifically alleged;

m.  Violated 49 CFR §214.315 by failing to communicate changes in the on-track safety to the work crew. This violation contributed to the accident;

n.  Violated 49 CFR §214.319 by failing to communicate changes in the on-track safety to the work crew. This violation contributed to the accident;

o.  Violated 49 CFR §214.321 by failing to properly ensure track safety with adequate personnel and procedures. This violation contributed to the accident;

p.  Violated 49 CFR §214.323 by failing to properly confirm foul time. This violation contributed to the accident;

q.  Violated 49 CFR §214.327 by failing to ensure trains could not enter the work area. This violation contributed to the accident;

r.  Violated 49 CFR §214.335 by permitting the work crew to inspect the track without proper on-track safety. This violation contributed to the accident;

s.  Violated 49 CFR §214.339 by failing to sound the locomotive horn as the train approached the work crew. This violation contributed to the accident;

t.  Violated 49 CFR §220.33 by failing to repeat a radio transmission ensuring its accuracy. This violation contributed to the accident;

u.  Violated 49 CFR §220.45 by failing to ensure radio transmissions were understood or complete before acting on them. This violation contributed to the accident.

52. The plaintiff demands a trial by jury on all issues.

For the reasons stated above, the plaintiff demands judgment against the defendant, AMTRAK, in a dollar amount compensating him for lost wages, future lost wages, benefits, pain and suffering, incurred expenses, plus interest, costs of prosecuting this claim and other amounts this Court and the jury deem appropriate.

Respectfully submitted,
Julius Chisholm,
By his attorney,


*/s/ Michael D. Keohane*
Michael D. Keohane (MA B.B.O. # 658556)
331 Lowell Avenue
Newton, MA 02460
P: (617) 213-0305
F: (617) 849-5827
mike.keohane@gmail.com

Dated: March 10, 2011